Daniel M. Shanley (SBN 169182)
dshanley@deconsel.com
Yuliya S. Mirzoyan (SBN 247324)
ymirzoyan@deconsel.com
DeCARLO & SHANLEY
A Professional Corporation
533 South Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone: (213) 488-4100
Facsimile: (213) 488-4180

Attorneys for PLAINTIFFS SOUTHWEST REGIONAL COUNCIL OF CARPENTERS; and JOHN TAFOYA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, a labor organization, and JOHN TAFOYA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF IRVINE, a municipality,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>1. Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq.<br>2. Violation of Plaintiffs' Constitutional Rights<br>3. Violation of Plaintiffs' Federally Protected Rights Under 42 U.S.C. § 1983<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The City of Irvine ("City") is a master planned city. Normally this pertained only to the zoning geography and building of the city. Under the current Supervisor of Code Enforcement Division, Keri Bullock, the City has become now the speech police – master planning what citizens can say to the public on a public sidewalk – a place "which 'ha[s] immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939).

2. For years, the Plaintiffs have displayed banners in the City without prior threats of censorship, speech confiscation or criminal sanction. That is until now.

3. For example, as recently as last fall and early winter Plaintiffs displayed a "labor dispute" banner on a public sidewalk in the City protesting Rivian. The banner "shamed" Rivian for its involvement in the dispute. Because the City found the speech acceptable it never challenged the Plaintiffs' right to display its banner on the public sidewalk.

4. All that changed however, once the City did not agree with the content of the Plaintiffs' message. The current banners, in addition to pointing out the "labor dispute" context, also questions whether there are "sex offenders in the neighborhood" and whether residents, including children, are safe living where offenders are living, and provides a QR Code that links to Meghan's Law disclosure page so the readers can find the answers to questions themselves. The Rivian banner in contrast did not mention "sex offenders" or question whether the safety of a neighborhood.

5. Not only has the City censored Plaintiffs' speech it does not like, it has likewise restricted speech based on content through its Sign Ordinance by expressly exempting other favored speech. The City has exempted speech it views as consistent with its master-planned censored discourse, including for example (a) its own commercial speech, (b) corporate flags, and (c) the United States flag.

6. Such government censorship, favoritism and discrimination is unconstitutional. They violate Plaintiffs' constitutional and statutory rights to display a banner protesting a labor dispute and providing the public information in language that they deem appropriate.

7. The City needs to be held accountable for what it has done and also be enjoined from their unlawful conduct because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## JURISDICTION

8. This action arises under the United State Constitution, particularly the First and Fourteenth Amendments, under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

9. This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

10. This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. § 2201, *et seq*.

11. This Court is authorized to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure.

12. This Court is authorized to award attorneys' fees. 42 U.S.C. § 1988.

## VENUE

13. Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391(b), in that the events giving rise to the claim occurred within the district.

## IDENTIFICATION OF PLAINTIFFS

14. Plaintiff Southwest Regional Council of Carpenters ("SWRCC") is a labor organization that engages in protest activities on public sidewalks in the City of Irvine.

15. Plaintiff John Tafoya ("Tafoya") is a representative of the SWRCC and engages in protest activities on public sidewalks in the City of Irvine.

**IDENTIFICATION OF DEFENDANT, ITS EMPLOYEES AND AGENTS**

16. The City of Irvine ("City") is a master-planned municipality authorized and organized under the laws of the State of California and located in Orange County. According to the California department of Finance 2019-2020 Population Estimates, the City of Irvine had approximately 277,000 residents.

17. The City has adopted Zoning Ordinance, including particularly a Sign Ordinance, Division 7.

18. Keri Bullock ("Bullock") is the City's Code Enforcement Supervisor and has either directly or through employees under her direction and control threatened to enforce to cite, confiscate the banners and criminally prosecute SWRCC and its representatives and agents, including Tafoya, for displaying the banners on City sidewalks.

19. Noam Duzman is the City's attorney and has directly or indirectly through the Code Enforcement department threatened enforce the sign ordinance against the SWRCC and its representatives and agents, including Tafoya, (including citing, confiscating the banners and criminally prosecuting) for displaying protest banners on sidewalks in the City.

20. The City acquiesces in, sanctions, and supports the actions of its Code Enforcement department, including Bullock, and its attorneys, including Duzman.

**STATEMENT OF FACTS**

21. For years Plaintiffs have peacefully protested "labor disputes" in the City by displaying banners on public sidewalks. Recently, Plaintiffs have displayed two banners. The banners are never left unattended but are physically manned at all times. At the end of the day, the banners are taken home.

22. Like the past banners, the current banners inform the public that there is a "labor dispute." But, instead of their typical "Shame On" banners shaming a participant in the labor dispute, the current banners question the safety of the neighborhood in light of the fact that sex offenders live nearby, as well as providing a QR Code linking to the

relevant information that underlies the question asked.

23. Never before has the City claimed that the Sign Ordinance (Zoning Code sec. 7-1-1 *et seq*.) applied to its banners or attempted to coerce Plaintiffs under threats of criminal sanction, fines and banner confiscation to stop entirely its banner display. That is until now.

24. The only difference from the prior banners is that the message on the current banners has changed—a message the City disapproves.

25. The City does not like the fact that the banners inform the public about sexual predators who live in the area and links to the Meghan's Law website. The City would prefer the public not know about this information because it may slow the sale of homes in its master planned city and may show that its city may not as desirable a place to live if such information is publicly displayed during the time open houses, along with its approved real estate advertising, are being shown.

26. The City also claims the banners are too large in violation of Zoning Ordinance, Sign Type #106, which requires "commercial" speech signs be only 3 square feet. But Sign Type #106 on its face does not apply. It applies only to "commercial signs," not "labor dispute" or "sexual predator" protest signs.

27. The City defines "commercial" as "a business operated for financial gain." (Section 1-2-1). The City defines a "commercial sign" as a "sign that contains commercial speech or a commercial message, and "commercial speech or commercial message" to be a "message or image that proposes a commercial transaction and/or that primarily concerns the economic interests of the speaker … or company that the speaker represents." (Section 1-2-1). Sign Type #106 also mandates that the "purpose" of the "[s]ign must be associated with a legitimate commercial enterprise in the City of Irvine for which permanent signs are not permitted."

28. Plaintiffs' banners—on their face—do not meet these definitions. The SWRCC is a non-profit labor organization. The banners' language includes both "labor dispute" and questions whether the neighborhood is safe from sexual predators or

whether sexual predators are in the neighborhood, along with a QR Code linking to the Meghan's Law website for sexual offenders. The message does not propose a commercial transaction, or any transaction at all, and does not "primarily," or otherwise, concern the economic interest of the Plaintiffs. The banners merely convey information.

29.




30.




31. Nor did the City engage in any investigation to establish any of the predicate facts necessary to making a valid determination that Sign Type #106 applied prior to

making their unlawful threats to criminally charge and fine Plaintiffs, and confiscate the banners.

32. As a backup plan concocted solely by the City Attorney (Noam Duzman) after-the-fact, Duzman for the first time introduced the notion that maybe the banner, if not prescribed under Sign Ordinance #106 might be prescribed under Sign Type #107. This ordinance applies to "temporary non-commercial signs," which are defined in the negative as "a sign that contains a non-commercial message, which is in turn is defined in the negative as "a message or image that is not commercial speech or a commercial message." This ordinance was never relied on by the City's Code Enforcement in making its unlawful threats. Knowing this, City Attorney Duzman refused to say the City relied on Sign Type #107 before making its unlawful threats, but "noted" that "if" the banners were not commercial speech, he could pigeon-hole the banners into Sign Type #107 and prohibit them that way.

33. As between Sign Type #106 ("off-site commercial") and Sign Type #107 ("off-site non-commercial"), off-site non-commercial signs (#107) are treated less favorably in some way than off-site commercial signs. For instance, non-commercial signs are limited in the length of time they can remain displayed to the event for which they relate. (Sign Type #107 – "Signs for a specific event (e.g., election) may be installed no earlier than 60 days prior to the event to which the sign relates and must be removed no later than 10 days after the event to which the sign relates.) In the context of the Plaintiffs' banners, this means Plaintiffs could only display their banners for as long as there is a labor dispute—as determined by the City. And, off-site commercial signs (#106) are treated less favorably than off-site non-commercial signs (#107) in that commercial signs are limited in the time they can be posted – 7 am to 7 pm – whereas non-commercial signs do not contain that time restriction.

34. City Attorney Duzman intervened because right away he recognized that the banners on their face were not "commercial," nor "commercial signs" nor "commercial speech or [a] commercial message" and recognized the lack of investigation conducted

by the Code Enforcement department before making their unlawful threats.

35. Free speech is not free when the censor can jump around from reason to reason for the sole purpose of stifling disfavored speech .

36. In any event, Sign Type #106 allows signs to be a maximum of only 3 square feet. (Sign Type #107 contains the same size restriction.) The lack of fit under any constitutional standard between this size restriction and the City's purpose is plainly revealed by the pictures of the banner located at the corner of Cadence and Merit juxtaposed to the "TOURGPN.COM" banner and the ***miles and miles*** of fence signs posted in the Great Park Development by FivePoint, Lennar.

37. The banner is displayed in front of the "TOURGPN.COM" banner that is affixed to the fence. The Tourgpn.com banner is larger than the Plaintiffs' banner, and still the City believes that Plaintiffs' banner must be only 3 sq. ft. Limited to only 3 sq. ft. would cut down the Plaintiffs' banner to include only 1 of the 2 QR codes, the "Labor Dispute" statement would be reduced to "Disp" cutting through "sp", and the "IN THE NEIGHBORHOOD" statement would be reduced to only the word "IN". See picture above. In contrast, Lennar's larger advertising banner would remain unmolested.

38.



39. In addition, right next to the TourGPN.com banner begins the ***miles and miles*** of fence banners advertising Lennars' FivePoint project.

40.




41.




42. The City cannot even meet a rational basis test (which does not apply) as to why Lennar is allowed to display its larger banner and the ***miles and miles*** of banners but limits Plaintiffs' banner to a mere 3 sq. ft. (Note: the applicable test is strict scrutiny.)

43. The City's discrimination includes many other examples of favoring certain

speech without any valid fit to any possible justification to ban Plaintiffs' banners. One need only drive around the City for an hour to see the hundreds, if not thousands, of signs—larger, smaller, multiple together, multiple on the same street block—that undercut any justification to limit non-commercial banners in general or prohibiting Plaintiffs' banners specifically.

44.




45.

46.


Great Park
NEIGHBORHOODS
PRADO
NEW HOMES FROM THE HIGH $700,000s
KB Home
TOURGPN.COM
Lennar Collections

47.


WOODBURY LANE
APARTMENT HOMES
NOW LEASING
(949) 451-5000
IrvineCompanyApartments.com
IRVINE COMPANY
APARTMENT COMMUNITIES
WOODBURY LANE
APARTMENT HOMES

48.




49. In fact, in contrast to Sign Type #106's 3 sq. ft. limit, Sign Type #18 allows certain business identification "Wall Signs" to be "up to 200 square feet;" Sign Type #23 allows certain business identification "Wall Signs" to be from 175 square feet to 450 square feet; Sign Type #26 allows "auto dealer signs" to be 75-feet high and 1,100 square feet per sign; Sign Type #33 allows "temporary future facility signs" to be 96 square feet; Sign Type #36 allows "temporary model home directional signs" to be 36 square feet; and Sign Type #109 allows "temporary contractor signs" to be 32 square feet.

50. The City's Sign Ordinance discriminates in other ways as well, including by expressly exempting certain favored signs from any regulation, including any size restrictions or time limitations. Section 7-2-2, Exempt Signs, Subsection A, provides: "The following types of signs are exempt from application, permit and fee requirements of this division." Among the many exemptions given government favored speech include the following: "official flags of the United States of America, the State of California, and other states of the United States," "flags of internationally and nationally recognized organizations including nautical flags," [c]orporate flags," "[o]ff-premises commercial signs erected or caused to be erected by the City," and [s]igns specified in Section 7-3-3

as being exempt from permit requirement compliance." Section 7-2-2.A.5, -.6, -.7, -.9.

51. In contrast to its favored speech, including its own commercial speech, the City mandates that, under Sign Type #106, Plaintiffs' purported commercial speech banners be limited to 3 square feet and cannot be displayed before 7 am or after 7 pm.

52. Favoring some speakers, including government "commercial speech," over others is a classic form of content discrimination. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

53. The above-mentioned provisions of the City Sign Ordinance, both on their face and as applied, violate Plaintiffs' free speech rights under the Federal and California Constitutions and under statutory law.

54. The above-referenced actions were taken by the City under the color of state law and pursuant to the City's ordinance, custom and policy associated with enforcing such ordinance.

55. There is an actual controversy between Plaintiffs and the City in that the City has threatened and continues to threaten censorship, confiscation and/or citation as long as Plaintiffs continue to peacefully display their labor dispute banners containing the messages that they currently do.

56. Title 42, Section 1988, of the United States Code provides the Plaintiffs with an appropriate remedy for the City' sanctions.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq.)

57. Plaintiffs incorporate by reference all preceding Paragraphs of the Complaint as though fully set forth herein.

58. An actual controversy exists between Plaintiffs and the City regarding the City's unconstitutional and statutorily prescribed sign ordinance, including the City's refusal to allow Plaintiffs to display a labor dispute banner on any public sidewalk within the City unless it is only 3 sq. feet and is not displayed before 7 am or after 7 pm, and

have threatened confiscation of the banner and criminal citation for allegedly violating the City's ordinance.

59. A declaratory judgment is necessary as Plaintiffs contend that the City has violated the Plaintiffs' constitutional and statutory rights by threatening confiscation of the banner, criminal citation and/or fine for displaying its banners on a public sidewalk.

60. In light of the City's ordinance, and threats by both the City attorney (Noam Duzman) and the City's Code Enforcement department of continued enforcement of the City's Sign Ordinance against Plaintiffs, which includes confiscation of the banner, criminal citation and fine, Plaintiffs have a reasonable expectation that the City will continue to make such threats and actually do so if declaratory relief is not granted.

61. Wherefore, Plaintiffs request a declaration that the Sign Ordinance, including but not limited to Section 7-3-3, Sign Types #106 and #107, be declared unconstitutional and violative of statutory laws as set forth below.

## SECOND CLAIM FOR RELIEF

**(Violation of Plaintiffs' Constitutional Rights)**

62. Plaintiffs incorporate by reference all preceding Paragraphs of the Complaint as though fully set forth herein.

63. The foregoing facts demonstrate a discriminatory effect on Plaintiffs' current banner displays and discriminatory purpose by the City in enacting and enforcing the Sign Ordinance against Plaintiffs' current banner displays.

64. By repeatedly denying Plaintiffs the right to display its labor dispute banner on any public sidewalk within the City and threatening Plaintiffs with banner confiscation, criminal citation and fines, the City has violated Plaintiffs' First and Fourteenth Amendment rights guaranteed by the United States Constitution and the free speech provisions of the California Constitution.

65. The City Ordinance, facially and as interpreted and applied by the City, deny Plaintiffs of their federal and state law protected rights to peacefully display a labor dispute banner on a public sidewalk, a traditional public forum.

66. The Sign Ordinance is content-based because, *inter alia*, it targeted Plaintiffs' current banners for censorship and regulation based on its message, it picks and chooses favored speech as seen in the pictures of advertising next to Plaintiffs' banner displays, and by exempting some signs from the City's ordinance while imposing restrictions on other banners, like Plaintiffs, by *inter alia* mandating that they be no more than 3 sq. ft., a size that renders Plaintiffs' banners useless as a speech medium to reach its intended audience.

67. The City's conduct and content-based Sign Ordinance is subject to strict scrutiny which it cannot survive. The City cannot meet its burden to prove its interests are compelling, that the ordinance is narrowly tailored or that the City used the least restrictive means to achieve its goals.

68. Even if the City's Sign Ordinance were found to be not content-based (which it is), the City's sign ordinance still violates the First and Fourteenth Amendments and the free speech provisions of the California Constitution because the City cannot meet intermediate scrutiny. The City cannot meet its burden to demonstrate that the ordinance is narrowly tailored to serve a significant government interest, and leaves open other effective alternative forms of communication.

## THIRD CLAIM FOR RELIEF

**(Violation of Plaintiffs' Federally Protected Rights Under 42 U.S.C. § 1983)**

69. Plaintiffs incorporate by reference all preceding Paragraphs of the Complaint as though fully set forth herein.

70. On or about February 2021, in violation of Plaintiffs' protected rights under federal and state constitutions and statutes, the City demanded Plaintiffs remove their banner displays from the public sidewalk under threat of confiscation, criminal citation and fine.

71. The City claimed the banner was prohibited commercial speech, but later concocted an after-the-fact justification to alternatively say maybe the banners are also prohibited non-commercial speech even though the message on each banner did not

change.

72. The City previously allowed unmolested Plaintiffs past banners because the City approved of the message but now disagree with the message on the current banners. The City seeks to hide the fact that sex offenders live in the area and may render the area unsafe for woman and children, and thus undesireable.

73. The actions of the City, which acted under color of statute, ordinance, regulation, custom and usage, caused the violation of Plaintiffs' constitutionally and statutorily protected rights.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs pray as follows:

### First Claim for Relief

1. For a judgment declaring that the City's Sign Ordinance unconstitutional, and the City's actions against Plaintiffs constitute a violation of Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and the free speech provisions of the California Constitution; that the actions of the City violated 42 U.S.C. § 1983; and that the challenged provisions of City's Sign Ordinance is unconstitutional both on its face and as applied to Plaintiffs in this matter.

### Second Claim for Relief

2. For preliminary and permanent injunctive relief enjoining the City, and its officers, employees, representatives and agents, from prohibiting Plaintiff John Tafoya and Plaintiff SWRCC, and its officers, employees, representatives and agents, from displaying the banners at issue or any other type of similar banner on the City's public sidewalks based on the Sign Ordinance;

3. For preliminary and permanent injunctive relief enjoining the City and its officers, employees, representatives and agents from further violating Plaintiffs' Constitutional and statutory rights;

4. For an Order directing the City to stop making unlawful threats against Plaintiffs;

5. An award of actual damages to Plaintiffs in an amount to be determined at trial;

6. An award of punitive damages to Plaintiffs in an amount to be determined at trial;

7. An award of attorneys' fees and costs to Plaintiffs; and

8. An award and order of any other relief which this Court deems just and proper.

**Third Claim for Relief**

9. For preliminary and permanent injunctive relief enjoining the City and its officers, employees, representatives and agents, from prohibiting Plaintiff John Tafoya and Plaintiff SWRCC, and its officers, employees, representatives and agents, from displaying the banners at issue or any other type of similar banner on the City's public sidewalks based on the Sign Ordinance;

10. For preliminary and permanent injunctive relief enjoining the City from further violating Plaintiffs' Constitutional and statutory rights;

11. For an Order directing the City to stop making unlawful threats against Plaintiffs;

12. An award of actual damages to Plaintiffs in an amount to be determined at trial;

13. An award of punitive damages to Plaintiffs in an amount to be determined at trial;

14. An award of attorneys' fees and costs to Plaintiffs; and

15. An award and order of any other relief which this Court deems just and proper.

DATED: February 12, 2021

DeCARLO & SHANLEY
A Professional Corporation

By: */s/ Daniel M. Shanley*
Daniel M. Shanley, Esq.

Yuliya S. Mirzoyan, Esq.

Attorneys for Plaintiffs SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, and JOHN TAFOY

**DEMAND FOR JURY TRIAL**

Southwest Regional Council of Carpenters and John Tafoya demand trial by jury on all issues and claims herein.

DATED: February 12, 2021

DeCARLO & SHANLEY
A Professional Corporation

By: */s/ Daniel M. Shanley*
Daniel M. Shanley, Esq.
Yuliya S. Mirzoyan, Esq.

Attorneys for Plaintiffs SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, and JOHN TAFOY